UNITED STATES DISTRICT COURT MIDDLE DISTRICT
OF FLORIDA TAMPA DIVISION

ERIC BEEDERS,

    Plaintiff,

v.                          Case No.: 8:09-458-T-17-EAJ

GULF COAST COLLECTION BUREAU,
INC.,

    Defendant.
_____/

## MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO ISSUE OF BRINGING SEPARATE ACTIONS FOR VIOLATIONS OF FDCPA SEPARATED IN TIME

Plaintiff Eric Beeders ("Beeders") hereby moves the Court pursuant to Federal Rule of Civil Procedure 56(a) and (c) for entry of an interlocutory final judgment against defendant Gulf Coast Collection Bureau, Inc. ("Gulf Coast") on the issue of whether a consumer has the right to bring separate actions based upon temporally displaced violations of the federal Fair Debt Collection Practices Act ("FDCPA" or "the Act") and the Florida Consumer Collection Practices Act ("FCCPA").

The law is well-settled that different causes of action may be brought, at the option of plaintiffs, in either separate lawsuits or as separate counts in a single lawsuit. Congress in passing the FDCPA included in the wording of the Act itself that it was being passed to remedy a serious unaddressed problem, and the courts are unanimous in concluding that the FDCPA is a remedial statute intended by Congress to be broadly construed in order to effect its

purpose. To rule that separate lawsuits may not be brought by the same plaintiff against the same defendant for multiple temporally displaced violations of the FDCPA would be to narrowly construe the Act and thus contravene the intent of Congress in passing it.

The single issue therefore presented to this Court is whether the FDCPA carves out an exception to well-settled law with respect to the right of plaintiffs to bring separate lawsuits based upon separate violations of the Act.[1] Neither the intent of Congress, nor the language of the Act, nor previous decisions by the courts mandate that the FDCPA be neutered or weakened by such a ruling. Indeed, it has just recently been noted in a Workshop Report by the Federal Trade Commission ("FTC") published within the past three months that the FDCPA is already a much-weakened statute from when it was passed in 1977.[2]

A decision to carve out an exception to well-settled law

---

[1] And the FCCPA as well, which provides that "Nothing in this part shall be construed to limit or restrict the continued applicability of the federal Fair Debt Collection Practices Act to consumer collection practices in this state," and "In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail." § 559.552, Fla. Stat. The FCCPA also provides at § 559.77(5), Fla. Stat., that "In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Thus, as goes the decision of this Court regarding the FDCPA, so also might it go with respect to the FCCPA.

[2] Collecting Consumer Debts, The Challenges of Change: A Workshop Report, publication of the Federal Trade Commission (February 2009). The FTC notes that the $1,000 maximum statutory damages passed in 1977 dollars equals less than $300 in today's dollars. It is also notes that "[i]t is important for the FDCPA to be primarily a self-enforcing statute as Congress intended" because the FTC "[r]eceives more than 70,000 third-party debt collection complaints per year [and] it is not feasible for federal government law enforcement to be the exclusive or primary means of deterring all possible law violations. Private actions therefore are critical in deterring those who would violate the FDCPA."

with respect to the FDCPA would turn the Act on its head, serving to **protect** debt collectors from effective enforcement of the Act where multiple statutory violations are committed over time. Finally, such a ruling would weaken what was meant to be a broad, remedial, consumer protection statute.

WHEREFORE, plaintiff Eric Beeders moves the Court for entry of an order of partial summary judgment reflecting that there is no prohibition against bringing separate actions for separate, temporally displaced violations of the Act, since each such violation constitutes a separate cause of action which may be brought in a single lawsuit or in separate lawsuits, at the option of plaintiffs.

<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION</u>

### I. PROCEDURAL HISTORY

This action was originally filed in the small claims division of the County Court of Hillsborough County, Florida on or about February 5, 2009, being Case No. 09-SC-3706 on the docket of that court; it made claim for one violation of the FDCPA and the FCCPA that occurred on February 6, 2008. The case was removed to federal court pursuant to a Notice of Removal filed herein on March 13, 2009.

Together with this action, nine other small claims cases were filed in the small claims division of the County Court of Hillsborough County by the same plaintiff, Eric Beeders; the causes are all against Gulf Coast for nine other separate,

temporally displaced violations of the FDCPA and FCCPA. The violations all involved telephone voice messages left on the telephone of Beeders between January 1, 2008 through April 16, 2008, inclusive, each of which separately violated 15 U.S.C. §§ 1692d(6) and 1692e(11) of the FDCPA, and § 559.72(7), Fla. Stat., of the FCCPA by failing to disclose that the calls were from a "debt collector" and related to collection of a debt. Only nine of the ten total cases filed in small claims court were removed to this Court.[3]

On April 7, 2009 this Court entered an Order Staying Cases (Docket Document #10, hereinafter "Dkt. #XX") which stayed all of the above-referenced cases which were removed from Hillsborough County small claims court,[4] and directing counsel for the plaintiff to file a status report within thirty (30) days from the date thereof if all cases expected to be removed and reassigned had not yet been removed and/or reassigned.

On May 7, 2009 Beeders filed the required Status Report (Dkt. #11) together with a Motion to Lift Stay in order for a Motion for Partial Summary Judgment to be filed addressing

---

[3]The tenth (and earliest-filed) case was apparently not removed because the time within which to petition for removal expired.

[4]Seven (7) of which had already been removed from state court, and two of which had not yet been removed and assigned to this jurist; all nine (9) cases that could be removed have now been removed, being Case Nos. 09-458, 09-461, 09-486, 09-487, 09-488, 09-599, 09-601, 09-631, and 09-668 on the docket of this Court. All have been reassigned to this jurist, except for 09-631 which is before Judge Steven D. Merryday and appears not to have yet been reassigned yet.

specifically the issue discussed, and only for that purpose.

On May 8, 2009 the Court entered an Endorsed order (Dkt. #13) granting the Motion to Lift Stay, but only in this action (the other removed cases not yet having been formally consolidated) and for the sole purpose of filing this Motion for Partial Summary Judgment, to be filed within twenty (20) days from the date thereof. This Motion follows.

## II. STATEMENT OF FACTS

At some time prior to January 31, 2008, defendant Gulf Coast Collection Bureau, Inc. was apparently retained by a creditor or debt portfolio owner to collect a debt allegedly owed by plaintiff Eric Beeders. Thereafter, on ten different occasions between and including January 31, 2008 to April 16, 2008 telephone calls were made by Gulf Coast to Eric Beeders regarding a debt allegedly owed by him. None of the ten calls from Gulf Coast were answered by Beeders;[5] telephone messages were accordingly left by Gulf Coast.[6]

The language of all the messages left was similar if not exactly the same, and went as follows:

> **This message is for Eric H. Beeders. If you are not Eric H. Beeders please hang up or disconnect. If you are Eric H. Beeders**

---

[5]Either because he was not home or because he was sleeping when the calls came in due to the fact that he was at that time working a nighttime shift as a pharmacist; other calls may have come from Gulf Coast and may have been answered by Beeders, but they are not germane hereto.

[6]All of the telephone messages left for Beeders by Gulf Coast were saved and are in possession of counsel for Beeders, to be presented as evidence at any eventual trial or trials.

> **please continue to listen to this message.
> By continuing to listen to this message you
> acknowledge that you are Eric H. Beeders.
> Please return this call by Roy Dillard from
> Gulf Coast Collection Bureau. Please call
> 877-827-4820 and ask for file number
> G31852.**[7]

The FDCPA mandates at 15 U.S.C. § 1692d(6) that a debt collector may not place telephone calls to consumers in connection with the collection of a debt "without meaningful disclosure of the caller's identity." Failure to disclose the purpose of a call (i.e. that the caller is a debt collector seeking to collect a debt) when leaving such messages is a violation of § 1692d(6).

Nor did the messages from Gulf Coast comply with the FDCPA at 15 U.S.C. § 1692e(11) which mandates in pertinent part that debt collectors must disclose in communications to consumers that the "[c]ommunication is from a debt collector...." It has also been held that not only must the message inform the hearer that the communication is from "a debt collector," but also that it is regarding a "debt." Foti v. NCO Financial, 424 F.Supp.2d 643 (S.D. N.Y. 2006).

The FDCPA provides that any debt collector who fails to comply with any provision of the FDCPA may be held liable for maximum statutory damages of $1,000.00 "in the case of any action by an individual...." 15 U.S.C. § 1692k(a)(2)(A). Thus,

---

[7] "Roy Dillard" was originally a party defendant, but it was disclosed that he was not a real person, but rather a "desk name," apparently utilized only as part of the telephone calling campaign.

the language of the FDCPA is clear that if multiple violations of the Act, stretching over weeks or even months, are asserted in a single lawsuit, a plaintiff consumer may recover only a maximum of $1,000.00, no matter how many violations are proven over any amount of time. The filing of multiple actions in state small claims court by Beeders is meant to avoid that statutory trap and limitation on damages.[8] Doing so achieves two goals: First it increases potential statutory damages awardable to wronged consumers. Second, and more importantly, it achieves more effective enforcement of the FDCPA against debt collectors who engage in wholesale violations of the FDCPA over time (and who may regard today's $1,000.00 maximum statutory sanction under the Act as a trifling "cost of doing business"), all as intended by Congress.

### III. STATEMENT OF ISSUE PRESENTED

May aggrieved consumers bring separate lawsuits against debt collectors who serially violate the FDCPA through separate, discrete, temporally displaced violations in connection with attempts to collect consumer debts?

### IV. ARGUMENT

---

[8]There is no question about the non-viability of multiple actions being brought for FDCPA violations that are **not** displaced in time, i.e. where multiple violations of the Act occur in the context of a single action. Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, n.10 (9th Cir. 1994) ("[I]t is not unusual for an action to violate more than one FDCPA provision."); Clark v. Capital Credit & Collection Serv., 46 F.3d 1162, 1177-78 (9th Cir. 2006) ("Although we have never squarely addressed the issue of overlapping liability under the FDCPA, our prior cases leave us convinced that one action can give rise to multiple violations of the Act."). When multiple violations of the Act do occur in the context of a single act, a maximum of only $1,000 may be awarded in any lawsuit. Harper v. Better Business Servs., Inc., 961 F.2d 1561, 1563 (11th Cir. 1992); Wright v. Finance Service of Norwalk, 22 F.3d 647, 651 (6th Cir. 1994).

A. STANDARD FOR SUMMARY JUDGMENT.

Rule 56(c) of the Federal Rules of Civil Procedure provides as follows:

> **Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.**

Entry of a summary judgment is not called for if there exists "[a] genuine and material issue of fact," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986), and "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id., at 248. "The party seeking summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact, and all evidence and all reasonable factual inferences therefrom must be viewed in a light most favorable to the party opposing the motion." Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985).

The question for purposes of this Motion for Partial Summary Judgment is not one of facts, but rather a pure

question of law which the Court may address and dispose of prior to further proceedings in the above-noted removed cases.

### B. SEPARATE CAUSES OF ACTION MAY BE BROUGHT IN SEPARATE LAWSUITS OR, IN THE ALTERNATIVE, ASSERTED IN SEPARATE COUNTS IN A SINGLE LAWSUIT, AT THE OPTION OF PLAINTIFFS AND THEIR COUNSEL.

In Florida the rule against splitting causes of action is discussed together with the doctrine of claim preclusion. It has been found that "The rule against splitting causes of action defines a cause of action in terms of a single wrongful act." _Tyson v. Viacom, Inc._, 890 So.2d 1205, 1212 (Fla. 4th DCA 2005), _citing_ _Froman v. Kirland_, 753 So.2d 114, 116 (Fla. 4th DCA 1999). The court in _Tyson_ observed as follows:

> **Within one set of identical facts, three wrongful acts could exist. In such a circumstance, bringing separate claims in separate complaints based on each wrongful act would not run afoul of the rule against splitting causes of action. However, this factual scenario would still run afoul of res judicata because the three separate claims would be based on identical facts. This hurdle is overcome where there are three separate sets of facts in addition to three separate wrongful acts. In such a circumstance there are three claims, each of which constitutes an independent cause of action capable of being raised in separate complaints.**

_Tyson_, 890 So.2d at 1212. This rule of law goes far back in Florida jurisprudence: In 1926 the Florida Supreme Court explained that "The test of the identity of causes of action, for the purpose of determining the question of res adjudicata,

is the identity of the facts essential to the maintenance of the suits." <u>Hay v. Salisbury</u>, 109 So. 617, 621 (Fla. 1926).

In the nine actions removed to this Court, the facts essential to the maintenance of each action are different; that is, they require separate proof of telephone messages left on the answering system of Eric Beeders on different dates. Thus, for purposes of the <u>Tyson</u> analysis, the Court is presented with different sets of facts and nine separate wrongful acts. Simply put, the facts in the nine cases are not the same, and thus they support the bringing of nine separate lawsuits, at the option of Beeders.

The Florida Supreme Court has observed that "While several causes of action may be joined in a single complaint, such joinder does not negate the fact that the plaintiff could have brought these claims in separate complaints. See Fla.R.Civ.P. 1.110(g). The operative question is whether the same facts are necessary to prove each cause of action." <u>Bacardi v. Lindzon</u>, 845 So.2d 33, 36 (Fla. 2002).

This concept goes far back in Florida jurisprudence: "The test of the identity of causes of action, for the purpose of determining the question of res adjudicata, is the identity of the facts essential to the maintenance of the suits." <u>Hay v. Salisbury</u>, 109 So. 617, 621 (Fla. 1926). Florida's Second District Court of Appeal has also addressed the question:

**True it may be the preferred practice to**

> **allege all of a party's causes of action in one complaint but the Florida Rules of Civil Procedure do not require that it be done. See Fla.R.Civ.P. 1.110(g). The rules permit joinder of causes of action but they do not prevent, nor is there any principle which precludes, the prosecution of several actions upon several causes of action....It makes no difference that the causes of action might be united in a single suit; the right of the party in whose favor they exist to separate suits is not affected by that circumstance...."**

Cole v. First Development Corp. of America, 339 So.2d 1130, 1131 (Fla. 2d DCA 1976) (internal quotations and citations omitted).

### C. DOES THE LANGUAGE OF THE FDCPA PRECLUDE AGGRIEVED CONSUMERS FROM BRINGING SEPARATE LAWSUITS FOR SEPARATE, TEMPORALLY DISPLACED VIOLATIONS OF THE ACT?

The statutory interpretation of the FDCPA must start with the language of the Act itself: "[W]e begin...with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs. New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)." Peter v. GC Services L.P., 310 F.3d 344, 351 (5th Cir. 2002). The most reliable indicator of Congressional intent is the plain language of a statute: "[T]he court should look to the language and design of the statute as a whole as well as the specific provision at issue. K-Mart Corp. v. Cartier, Inc., 486 U.S. 281 (1988)." United

<u>States v. Boyles</u>, 57 F.3d 535 (7th Cir. 1995). Furthermore, in interpreting a statute a court "[m]ust give effect to the unambiguously expressed intent of Congress." <u>K-Mart Corp.</u>, 486 U.S. at 291.

It has been ruled that "There is no prohibition in the FDCPA against separate lawsuits for separate statutory violations of the FDCPA by the same defendant." <u>Goins v. JBC & Associates, P.C.</u>, 352 F.Supp.2d 262, 267 (D. Conn. 2005). However, after making the above unambiguous statement, the <u>Goins</u> court follows with the observation that "Where, as here, the subsequent action is not duplicative and would not be barred under the claim preclusion doctrine, plaintiff may avail herself of the serendipity of an additional FDCPA violation by the same defendant subsequent to initiation of a prior lawsuit and thereby avoid a per action damages limitation, as is undoubtedly plaintiff's strategy here." The court in <u>Goins</u> first stated a general principle, that multiple actions for separate violations of the FDCPA by the same defendant may be brought if "the subsequent action is not duplicative and would not be barred under the claim preclusion doctrine." Then the court there discusses the particular facts before it, where an additional FDCPA violation was committed after an initial action was filed, is **one such instance** where an additional claim may be brought by the same consumer against the same debt collector. It does not foreclose other

fact situations, such as in the instant cases, where multiple temporally displaced FDCPA violations are neither duplicative nor barred by the claim preclusion doctrine. The Goins court's further discussion of claim preclusion and "duplicativeness" is worthy of specific note:

> **The determination of whether a suit is duplicative is informed by the doctrine of claim preclusion. "[T]he true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." Id. (quoting United States v. The Haytian Republic, 154 U.S. 118, 14 S.Ct. 992, 38 L.Ed. 930 (1894)). Thus, a suit is duplicative, and claims would be precluded, where "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit." Id. at 139 (citation omitted); Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir.1997) (claim preclusion applies when a second suit "involves the same 'transaction' or connected series of transactions as the earlier suit; THAT IS TO SAY, THE SECOND CAUSE OF ACTION REQUIRES THE SAME EVIDENCE TO SUPPORT IT AND IS BASED ON FACTS THAT WERE ALSO PRESENT IN THE FIRST.").**
>
> **Claim preclusion, however, "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit.... The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims." Curtis, 226 F.3d at 139 (citing SEC**

> **v. First Jersey Sec., Inc., 101 F.3d 1450, 1464 (2d Cir.1996)). The instant suit is based on a single letter sent by JBC to plaintiff in February 2003, after the two earlier lawsuits had been commenced. Even if the letter were part of the same debt collection activity that defendants had been engaged in and which was the subject of plaintiff's prior suits, the February 17, 2003 letter constitutes a separate event which may violate the FDCPA independently of prior communications from defendants. Because the facts underlying this suit arose subsequent to the filing of plaintiffs' previous complaint and are distinct from the facts underlying the previous suit, this action is not duplicative.**

Goins, 352 F.Supp.2d at 266-67 (capitalized emphasis added). The emphasis is added above in order to show that the court is stating a general principle, and then applying the facts at hand to that principle. The facts discussed there---i.e. the violation of the FDCPA after an initial suit is filed---should not be taken to indicate that multiple lawsuits on temporally displaced violations of the Act are therefore generally precluded. To do so would be to contravene the intent of Congress for consumers to vigorously and effectively enforce the provision of the FDCPA in private actions.[9]

Other courts have hit "around" the question of multiple lawsuits under the FDCPA, but only one has directly addressed

---

[9]It is widely recognized that Congress intended the primary enforcement mechanism of the FDCPA to be the bringing of private lawsuits on behalf of aggrieved consumers as "private attorneys general." See, e.g., Jacobson v. Healthcare Financial Services, Inc., 2008 WL 383060 (2d Cir. Feb. 14, 2008); Graziano v. Harrison, 950 F.2d 107, 113 (3rd Cir. 1991); Johnson v. Eaton, 958 F.Supp. 261 (M.D. LA 1997); Mann v. Acclaim, 348 F.Supp.2d 923 (S.D. OH 11-10-04); Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647, 650 (6th Cir. 1994).

the issue. For instance, the 11th Circuit in <u>Harper v. Better</u>
<u>Business Services, Inc.</u>, 961 F.2d 1561, 1563 (11th Cir. 1992),
ruled as follows:

> **The FDCPA clearly states that additional damages "in the case of any action by an individual" shall not "exceed[ ] $1,000." 15 U.S.C. § 1692k(a)(2)(A) (1988) (emphasis added). The FDCPA does not on its face authorize additional statutory damages of $1,000 per violation of the statute, of $1,000 per improper communication, or of $1,000 per alleged debt. If Congress had intended such limitations, it could have used that terminology. BECAUSE CONGRESS INSTEAD CHOSE TO WRITE THAT ADDITIONAL DAMAGES WOULD BE LIMITED TO $1,000 PER "ACTION," we agree with the district court that "the plain language of section 1692k(a)(2)(A) provides for maximum statutory damages of $1,000." Harper, 768 F.Supp. at 819.**
>
> **We acknowledge Harper's attempt to influence our construction of the FDCPA by utilizing the statute's legislative history and by advancing various policy arguments. But when the language of a statute is so clear, that text must control unless there is a clearly expressed legislative intent to the contrary....In this case, Harper has failed to make the required clear showing that the legislature intended anything other than a $1,000 PER ACTION limitation.**

(Internal citations omitted; capitalized emphasis added.)
Thus, although the court in <u>Harper</u> ruled that the $1,000.00
statutory damages limitation in the FDCPA is a "per action"
limitation, it did not address the issue of whether multiple
lawsuits are foreclosed under the FDCPA for multiple
temporally displaced violations.

Similarly, in the Middle District of Florida, one jurist has had multiple FDCPA actions before him for temporally displaced violations of the Act. However, in that action a Rule 68 Offer of Judgment was accepted prior to the Court addressing the issue. See Beeders v. Transworld Systems, Inc., Case No. 8:08-cv-1298 (M.D. Fla. 2008).

Only in the case of White v. Bruck, 927 F.Supp. 1168, 1171-72 (W.D. Wis. 1996), did the court directly address the question of separate actions being brought by consumers for multiple temporally displaced violations of the FDCPA. While limiting statutory damages in that single action to $1,000.00, the court there observed as follows:

> [P]laintiff argues that the $1,000 limit discourages joinder of claims and parties and encourages the filing of separate lawsuits for each violation. However, the doctrine of claim preclusion works against the evil plaintiff envisions. It prevents the splitting of a single cause of action among multiple suits and discourages parties from omitting violations that are part of the same transaction or occurrence....In addition, the doctrine of consolidation deters lawyers from filing separate claims; it allows courts to order joint trials or hearings in actions involving common questions of law or fact. See generally 9 Wright, Miller and Kane, supra, § 2382 (1995). Finally, even if plaintiff is correct that some lawyers may file separate claims when a defendant has committed multiple violations of the act, this does not negate the fact that the clear language of § 1692k(a)(2)(A) and the majority of decisions interpreting the statute suggest

> **that additional damages are limited to
> $1,000 per action.**

<u>White</u>, 927 F.Supp. at 1171-72. As we have seen above, the
bringing of separate actions for separate temporally displaced
violations of the FDCPA does not run afoul of the Claim
Preclusion Doctrine. The court also opines that the option of
consolidation would deter aggrieved consumers from filing
separate lawsuits. However, consolidation would not affect the
separate nature of the actions:

> Cases consolidated under Rule 42(a)...retain
> their separate identity. <u>Patton v. Aerojet
> Ordnance Co.</u>, 765 F.2d 604, 606 (6th Cir.
> 1985). And although 'consolidation is
> permitted as a matter of convenience and
> economy in administration, [it] does not
> merge the suits into a single cause, or
> change the rights of the parties, or make
> those who are parties in one suit parties in
> another.' <u>Johnson v. Manhattan Ry. Co.</u>, 289
> U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331
> (1933). Therefore, it is the district
> court's responsibility to ensure that
> parties are not prejudiced by consolidation.

<u>Lewis v. ACB Business Services, Inc.</u>, 135 F.3d 389, 412-13
(6th Cir. 1998). If defendants choose to remove small claims
state court actions to federal court, it would be a simple
matter for the federal court to enter an order consolidating
the cases when it receives the required notice of related
cases. Local Rule 1.04.

The last comment made by the <u>White</u> court is worthy of
special note also: "Finally, even if plaintiff is correct that
some lawyers may file separate claims when a defendant has

committed multiple violations of the act, this does not negate the fact that the clear language of § 1692k(a)(2)(A) and the majority of decisions interpreting the statute suggest that additional damages are limited to $1,000 per action." The court thus recognizes that even if the result of its ruling is for multiple actions to be filed for temporally displaced violations of the Act, it is still bound by the Act, both because of the clear words of the statute and because that is how myriad other courts have interpreted the $1,000.00 statutory damages limitation "in the case of any action by an individual." 15 U.S.C. § 1692k(a)(2)(A).

Several recent state court decisions have been made on the issue presented here. Hillsborough County Court Judge Gaston J. Fernandez recently ruled that multiple lawsuits brought for separate temporally displaced violations of the FCCPA may be brought, and stand on their own, entering the Order attached as Exhibit "A". Circuit Court Judge Susan Gardner of the 6th Judicial Circuit of Florida has also recently ruled that the FCCPA allows the filing of multiple lawsuits for temporally displaced violations of the FCCPA, as shown by the Order on Plaintiff's Third Motion to Dismiss Counterclaim attached as Exhibit "B".[10]

## D. THE "EVIL" OF MULTIPLE LAWSUITS, AND

---

[10] Hillsborough County Court Judge Paul Jeske recently ruled the opposite of Judge Fernandez on the issue, but no written order has yet been entered in that action.

## THEIR ADMINISTRATIVE HANDLING BY THE COURTS.

As noted above, the court in White, 927 F.Supp. at 1171, argued that "[T]he doctrine of claim preclusion works against the evil plaintiff envisions" (i.e. filing multiple lawsuits to evade the $1,000.00 per action limitation).

At the outset it should be noted that it is more than a little strange that any court should see multiple actions brought under the FDCPA as an "evil," since that is precisely the enforcement mechanism Congress intended, and the more such lawsuits are filed, logically speaking, the more effective the enforcement of the Act will be.[11]

Secondly the recognition of the right to bring multiple lawsuits for temporally displaced violations of the FDCPA would tend to decrease the number of such actions being filed at in federal district courts. This is because, given the $1,000.00 per lawsuit limitation, filing fees in small claims courts are invariably far lower than the federal court filing fee. An example is the Florida small claims court where the instant case was filed: The filing fee for each of the ten cases filed was $175 (plus $10 for each summons issued), making the cost of filing multiple actions in small claims

---

[11] The plaintiff in this action, Eric Beeders, has brought such multiple lawsuits. Any argument that he has "taken advantage of the FDCPA," or "filed too many lawsuits" runs contrary to the intent of Congress that private plaintiffs are to be encouraged to bring such actions. Jacobson v. Healthcare Financial Services, Inc., 2008 WL 383060 **15-16 (2d Cir. 2/14/08).("[T]he FDCPA enlists the efforts of sophisticated consumers like Jacobson as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.")

court about half the cost of filing in federal district court.

As to small claims cases where defendants remove the actions to federal court, with the attendant expense of doing so, it is difficult to imagine a reason for doing so other than seeking some sort of tactical advantage, especially in view of the fact that small claims courts are administratively designed to quickly handle large numbers of cases involving small amounts.[12] However, when wholesale removals do occur, it can still be an easy matter to consolidate for administrative purposes and to conserve the court's resources.[13]

> E. THE FDCPA IS A BROAD, REMEDIAL CONSUMER PROTECTION STATUTE INTENDED TO BE LIBERALLY CONSTRUED IN ORDER TO EFFECT THE PURPOSES FOR WHICH IT WAS PASSED; INTERPRETING IT SO AS TO PROHIBIT MULTIPLE ACTIONS FOR TEMPORALLY DISPLACED VIOLATIONS CONTRAVENES THE PURPOSE OF THE ACT.

The courts are unanimous in finding that the FDCPA is a broad remedial statute which must be liberally construed in order to effect the purposes for which it was passed. Brown v. Card Service Center, 464 F.3d 450 (3d Cir. 2006). ("Because

---

[12]Any perceived tactical advantage gained by removing small claims FDCPA cases to federal court can only be a matter of conjecture, but apparently is related to either seeking a less accommodating venue for such actions, or is done as an intimidation factor (given that a relatively small percentage of all State Bar members practice before the federal courts at all). Ironically, it appears that such a tactic would succeed only to the extent that consumer plaintiffs are seen as blameworthy for bringing small claims actions before the federal bench, when in fact the causation would be defendants removing such cases. Thus, the less accommodating federal courts are perceived to be to FDCPA actions, the more defendants will be encouraged to remove them, irrespective of the additional costs incurred.

[13]There is also no doubt that the federal bench would be advised of such cases, since Local Rule 1.04 requires the notification of the pendency of separate concurrent actions and/or the existence of one or more similar cases pending before or about to be pending before other courts.

the FDCPA is a remedial statute...we construe its language
broadly, so as to effect its purpose....") (internal citations
omitted); Broadnax v. Greene Credit Service, 106 F.3d 400 (6th
Cir. 1997) ("Congress...clearly intended the FDCPA to have a
broad remedial scope."); and Hamilton v. United Healthcare of
Louisiana, Inc., 310 F.3d 385, 392 (5th Cir. 2002) ("Congress
...intended for the [FDCPA] to have a broad remedial scope.").
The 11th Circuit has also ruled that when a law is remedial in
nature it "must be construed liberally in order to best serve
Congress' intent." Ellis v. General Motors Acceptance Corp.,
160 F.3d 703, 707 (11th Cir. 1998).

In sum, those who argue that separate lawsuits may not be
brought by aggrieved consumers for temporally displaced
violations of the FDCPA are arguing for a narrow, cramped
interpretation of the Act, which, as noted, is exactly the
opposite of what the Act's words are and what Congress
intended.

## V. CONCLUSION

The Court should enter an order recognizing that
consumers may bring multiple lawsuits against debt collectors
for multiple temporally displaced violations of the Act, and
that the bringing of such lawsuits comports both with the
language of the Act and the intent of Congress in passing it.
Accordingly, the Court should grant this Motion for Partial
Summary Judgment as to the single issue discussed above, in

accordance with the provisions of Fed.R.Civ.P. 56(c).

Respectfully submitted,

s/ Timothy Condon, Esq.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2009 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

s/ Timothy Condon
TIMOTHY CONDON, ESQ. FBN 217921
307 South Fielding Avenue, #2
Tampa, Florida 33606-4126
813-251-2626    Fax 813-251-2009
Email: tim@timcondon.net
COUNSEL FOR PLAINTIFF